# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

PHIL G. [1]                                                      Case No. 2:22-cv-3909

            Plaintiff,

v.                                                            Bowman, M.J.

COMMISSIONER OF SOCIAL SECURITY,

            Defendants.

**MEMORANDUM OF OPINION AND ORDER**

Plaintiff Phil G. filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff presents two claims of error, both of which the Defendant disputes. As explained below, the Administrative Law Judge (ALJ)'s finding of non-disability should be **AFFIRMED**, because it is supported by substantial evidence in the administrative record. The parties have consented to the jurisdiction of the undersigned magistrate judge. *See* 28 U.S.C. §636(c).

**I. Summary of Administrative Record**

On October 28, 2019, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI) alleging he became disabled on June 1, 2007, based upon a combination of physical and mental impairments. After his claim was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an Administrative Law Judge ("ALJ"). Before the hearing, Plaintiff amended his

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials. *See* General Order 22-01.

onset date of disability to May 20, 2019.  At a telephonic hearing held on August 10, 2021, Plaintiff appeared with counsel and gave testimony before ALJ Michael Schmitz. Vocational Expert Michael Klein also appeared by telephone.  On July 29, 2021, the ALJ issued a written decision, concluding that Plaintiff was not disabled.  (Tr. 13-25).

Plaintiff was born on October 14, 1974 and was 46 years old at the time of the hearing. (Tr. 29). He has a high school education and has past relevant work as a janitor.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "cervical degenerative disc disease; lumbar degenerative disc disease with sciatica; internal derangement of right knee; right rotator cuff strain; diverticulitis, irritable bowel syndrome and lower gastrointestinal hemorrhage; bipolar disorder, mood disorder and depressive disorder; anxiety disorder; and post-traumatic stress disorder (PTSD); and cannabis dependence." (Tr. 16). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1.  Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform light work subject to the following limitations:

> He can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs. He can occasionally stoop, kneel, crouch, and crawl. He can frequently reach overhead with his bilateral upper extremities. He must avoid concentrated exposure to extreme cold and vibrations, and avoid all exposure to hazards such as unprotected heights and moving mechanical parts. He can perform simple, routine and repetitive tasks, but cannot perform tasks which require a high production rate pace such as assembly line work. He can interact on an occasional basis with supervisors, coworkers and the general public, but should be limited to superficial contact meaning no sales, arbitration, negotiation, conflict resolution or confrontation, no group, tandem or collaborative tasks, and no management, direction or persuasion of others. He can respond appropriately to occasional change in a routine and relatively static work setting, as long as any such changes are easily explained and/or demonstrated in advance of gradual implementation.

(Tr. 18).

Based upon his RFC and testimony from the vocational expert, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy, including marker, bagger and produce weigher. (Tr. 24). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB and SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: (1) improperly formulating Plaintiff's mental RFC; and (2) applying the incorrect legal standard at step-five of the sequential evaluation. Upon close analysis, I conclude that Plaintiff's arguments are not well-taken.

**I.     Analysis**

**A.  Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

3

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); see also *Walters v. Comm'r of Soc. Sec.*, 127 F.3d

4

525, 528-29 (6th Cir. 1997) (explaining sequential process); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's Decision is supported by Substantial Evidence**

*I. Mental RFC Determination*

Plaintiff argues first that the ALJ's RFC determination is not supported by substantial evidence because it does not properly account for his mental impairments. Specifically, Plaintiff argues that in making his residual functional capacity determination, the ALJ found the opinions of the State agency psychologists "persuasive", however, he failed to include all of these limitations in his residual functional capacity determination. Plaintiff's contention lacks merit.

The RFC is the "most [an individual] can still do despite [his physical and mental] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ determines the claimant's RFC using "all the relevant evidence in [the] case record." Id. Yet it is the claimant's burden to establish his RFC. See id. § 416.945(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity."); see also *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (claimant bears the burden of demonstrating a more restrictive RFC); *Casey v. Sec'y of Health & Human*

*Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) ("Plaintiff has the ultimate burden of establishing the existence of disability.").

Here, in formulating Plaintiff's RFC, the ALJ determined that the opinions of the state agency psychologists and consultative psychologists were persuasive. (Tr. 22). Notably, in July 2020, Amanda Conn, Psy.D., performed a consultative evaluation and opined that Plaintiff could perform simple and complex instructions, had some limitations in concentration and persistence, had some limitations in interacting with others, and may have difficulty dealing with normal work pressures. (Tr. 365-78). The ALJ found "the opinion of Dr. Conn to be persuasive, as it seems to take into consideration all factors, and comports with the balance of the medical evidence and the claimant's own testimony to the extent that it indicates that the claimant has some moderate limitations due to his mental impairments." (Tr. 22).  At the same time, however, the ALJ also found Dr. Conn's opinion to be vague.

Also, in July 2020, Irma Johnston, Psy.D., reviewed the record and found that Plaintiff could carry out simple, routine tasks in a static setting without demands for fast pace or high production; could interact with the public, supervisors, and co-workers on an occasional, brief, and superficial basis; could adapt to occasional workplace changes with some supervisory support; and could perform work activities in a predictable and structured setting. (Tr. 71-72). In November 2020, Vicki Warren, Ph.D., reviewed the record and affirmed Dr. Johnston's findings. (Tr. 92-93). The ALJ found that the opinions of these experts to be persuasive, since their determination of the "B" criteria and resultant limitations are supported by the Plaintiff's health records, conservative mental health treatment, and testimony. However, the ALJ noted the proposed limitation of supervisory

6

support by the state agency examiners was not defined but appeared to be limited to work changes. (Tr. 22, 72, 93). As such, the ALJ did not include a limitation of "supervisory support" in the RFC finding. Instead, the ALJ found that Plaintiff could adapt to occasional workplace changes, in a routine and relatively static work setting, that are easily explained and/or demonstrated in advance of gradual implementation. (Tr. 18).

In light of the forgoing, the ALJ found that Plaintiff could perform simple, routine, and repetitive tasks that did not require a high production rate and could interact superficially on an occasional basis with supervisors, co-workers, and the general public. (Tr. 18, 71-72, 92-93).

Plaintiff takes issue that the ALJ indicated that he found the opinions of the State agency psychologists and consultative examiner to be "persuasive" but yet he failed to include all of the limitations in his residual functional capacity determination. In this regard, Plaintiff contends the ALJ's residual functional capacity determination does not adequately account for the limitations associated with Plaintiff's ability to understand, to concentrate, and his inability to accept criticism. Plaintiff asserts that such limitations are supported by the evidence in the record, noting frequent anxiety, problems with concentration, trouble focusing, lack of motivation, memory problems, and difficulty being around other people. (See Tr. 43, 45, 48-50, 266, 289, 304, 318, 328, 340, 368, 377, 411, 450, 464, 476, 541, 600).

Plaintiff further argues that case management notes consistently documented his need for additional support, due to his mental health issues, such as: assistance with applying for food and medical benefits and assistance/supervision with grocery shopping. (Tr. 399, 409, 494). In addition, he argues that the record consistently documents bipolar

7

disorder, depression, anxiety, panic issues, numbness, sleeps a lot, trouble focusing, difficulty remembering things, lack of motivation, panic attacks, lack of patience when dealing with other people, lack of energy, history of suicide attempt in 2010, self-harm behaviors including cutting himself, nightmares, pink slip due to suicidal intent and plan. (Tr. 3, 45, 48-50, 266, 289, 304, 318, 328, 340, 368, 377, 411, 450, 464, 476, 541, 600). As such, Plaintiff argues that the record supports a finding that he may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job. In light of the foregoing, Plaintiff argues that ALJ's RFC and hypothetical question is not adequate on the issue of moderate limitations of concentration, persistence, and pace. Plaintiff's contentions are unavailing.

As noted by the Commissioner, the ALJ RFC's assessment adequately addressed Plaintiff's mental limitations. Namely, Drs. Johnston and Warren found that Plaintiff could carry out simple, routine tasks in a static setting without demands for fast pace or high production; could interact with the public, supervisors, and co-workers on an occasional, brief, and superficial basis; and could adapt to occasional workplace changes with some supervisory support and perform work activities in a predictable and structured setting. (Tr. 71-72, 92-93). As discussed above, the ALJ included those limitations that he found persuasive from the prior administrative medical findings into the RFC. (Tr. 18, 22). The ALJ found that the consultants' findings regarding the paragraph "B" criteria, as well as their characterization of Plaintiff's functional limitations, were supported by Plaintiff's health records, conservative mental health treatment, and testimony. (Tr. 22). The ALJ also properly considered that Plaintiff was able to drive, prepare meals, play games, manage funds, use the internet, and handle his own medical care. (Tr. 18). See SSR 16-

3p (an ALJ may consider statements about a claimant's daily activities when assessing the consistency of the claimant's statements).

Additionally, numerous cases from the Sixth Circuit, have held that limitations similar to those the ALJ included in Plaintiff's RFC in this case adequately addressed Plaintiff's moderate limitations in concentration, persistence, or maintaining pace. *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 (6th Cir. 2014) (concluding that a "limitation to simple, routine, and repetitive tasks" adequately accounted for the plaintiff's "moderately-limited ability 'to maintain attention and concentration for extended periods'"); *Wood v. Comm'r of Soc. Sec.*, No. 19-1560, 2020 WL 618536, at *2–4 (6th Cir. Jan. 31, 2020) (RFC limitation to "performing simple and routine tasks" was not inconsistent with ALJ's step three finding that the plaintiff had moderate limitations in concentration, persistence, and pace because the plaintiff failed to show that the evidence warranted additional limitations)

Although Plaintiff may disagree with the ALJ's decision, he has not shown that it was outside the ALJ's permissible "zone of choice" that grants ALJs discretion to make findings without "interference by the courts." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406. Even if a reviewing court would resolve the factual issues differently, when supported by substantial evidence, the Commissioner's decision must stand. *See Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). Indeed, the Sixth Circuit upholds an ALJ's decision even where substantial evidence both contradicts and supports the decision. *Casey v. Sec'y of H.H.S.*, 987 F.2d 1230, 1235 (6th Cir. 1993). For these reasons, the ALJ's decision is substantially supported in this regard and should not be disturbed.

*II. Step-Five Determination*

Plaintiff argues next that the ALJ failed to apply the correct legal standards in evaluating his claims. Namely, Plaintiff argues that the ALJ erred by stating that he filed an application for disability insurance benefits. In this regard, Plaintiff argues that the ALJ's reference to a claim for disability insurance benefits was harmful because it is unclear what time period the ALJ evaluated. Plaintiff's contentions are unavailing.

As noted above, Plaintiff filed an application for disability insurance benefits under Title II of the Act, wherein Plaintiff alleged that he became disabled on June 1, 2007. (Tr. at 180). Notably, a claimant who seeks disability insurance benefits must have disability insured status in the month in which he became disabled. See 20 C.F.R. § 404.131(b). Certain earnings as a government employee do not count toward disability insured status, but "may constitute Medicare qualified government employment," or MQGE. 20 C.F.R. § 404.1018b(a). Plaintiff had a history of working for the local school system and, as such, did not pay into Social Security for a period of time. Thus, this work did not count toward disability insured status but did constitute MQGE (R. at 84, 189, 202, 207). As a result, the ALJ found that Plaintiff was insured for Medicare purposes through June 30, 2025, the "date last insured." (Tr. 14-15).

At the hearing, Plaintiff's counsel amended Plaintiff's alleged onset date to May 20, 2019. Because he was no longer insured for disability insurance benefits in 2019, this amendment purportedly withdrew the disability insurance benefits application (Tr. 205). However, the ALJ did not state that Plaintiff's amendment of his alleged onset date effectively withdrew his disability insurance benefits claim and converted the application to a Medicare application based on MQGE.

The Commissioner contends that such omission is harmless because the same legal standards apply to applications for disability insurance benefits and Medicare benefits based on MQGE. See 42 U.S.C. § 426(b)(2)(C)(ii) (providing that individual is entitled to Medicare Part A benefits if MQGE were treated as covered employment for Social Security benefits); POMS DI 25501.365 ("For the disability requirement of the law, we evaluate MQGE using the same criteria we use to evaluate title II DIB claims."); *Dimas v. Kijakazi*, No. CV 20-0345 JHR, 2021 WL 4847272, at *1 (D.N.M. Oct. 18, 2021) ("The same sequential evaluation process applicable to disability insurance claims applies [to Medicare claims based on MQGE]").

Here, the state agency determined that Plaintiff's date last insured for Medicare purposes was December 31, 2024. (Tr. 66).  Thus, the Commissioner contends that this discrepancy is immaterial in this case as both dates were years after the ALJ's decision and could have no impact on the outcome. Plaintiff, however, argues that this error of fact cannot be considered harmless error because it cannot be clear to subsequent reviewers which time period the ALJ was considering and/or if the evidence he was considering was associated with this claim.

As noted above, at the hearing, Plaintiff's amended his alleged onset date to May 20, 2019. (Tr. 15, 19-23).  The ALJ's decision explicitly determined that Plaintiff had "not been under a disability within the meaning of the Social Security Act from May 20, 2019, through the date of this decision." (Tr. 14).  The ALJ's decision clearly shows that he considered the evidence from Plaintiff's alleged onset date of disability of May 2019 through the date of the decision.  He did not discuss any evidence prior to May 2019.  As

noted by the Commissioner, there is no indication that the ALJ considered Plaintiff's disability outside of the relevant time period.

Accordingly, the undersigned finds that the ALJ properly evaluated Plaintiff's claims.

### III. Conclusion

For the reasons explained herein, **IT IS ORDERED THAT** Defendant's decision is **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and is **AFFIRMED**, and that this case is **CLOSED**.

<u>s/Stephanie K. Bowman</u>
Stephanie K. Bowman
United States Magistrate Judge